# Shuster *versus* Kaiser and Wife in right of Wife.

A married woman having a separate estate may purchase personal property on credit, and if in so doing her husband who has no creditors, and without intent to defraud subsequent creditors, gives his notes to the vendor for the unpaid purchase money, and she subsequently pays the unpaid purchase money secured by her husband's notes out of the profits and earnings of the business, the purchase is valid as against her husband's creditors.

November 5th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court· of Common Pleas No. 1. of *Allegheny county:* Of October and November Term, 1885, No. 124.

This was a feigned issue, to try the right of property to certain goods and chattels which Jacob Shuster had caused to be levied on as the property of Julius Kaiser, husband of Theresa Kaiser, who claimed them.

The facts of the case as they appeared on the trial before COLLIER, A. L. J., sufficiently appear in the charge to the jury, and in the opinion of the Supreme Court.

The plaintiff requested the court to charge *inter alia* as follows:

*Third.* That the husband had a right to act for his wife in buying and selling, and by so doing no property vested in him nor a right thereto in his creditors. Affirmed. (First assignment of error. The second assignment of error was that the court did not refuse said point.)

*Fifth.* That the husband may give his promissory notes for and on account of his wife, for her purchases without thereby subjecting the goods so bought to the claims of his creditors.

*Answer.* So far as this point is affirmed in the general charge it is affirmed, and so far as it is refused in the general charge it is refused." (Third assignment of error.)

The court charged the jury as follows:

This case is what we call a sheriff's interpleader. The defendant sued Julius Kaiser and obtained judgment against him. After he got the judgment he tried to make his money, and finding Mr. Kaiser in possession of a saloon he had the sheriff levy on the stock and fixtures of it. Mrs. Kaiser then made claim of ownership of the property and you are now to determine whether she or Kaiser, who is her husband, owned it. The property being in the possession of Kaiser she must satisfy you by clear and satisfactory evidence that it is her property; that she got the money with which she bought it from other sources than her husband.

It is claimed that she has satisfied you of that. It is undisputed that she got from her father's estate four hundred and fifty dollars; that she took two hundred of that and bought a saloon—not the one in question—and ran ·it with her husband; put him in or let him go in to help take care of it; attend to it, which she had a right to do. It is alleged that after she had carried on that saloon with her husband's assistance, this Panhandle property, as it is called, was offered for sale; that she had then two hundred dollars she had saved out of the other saloon which she invested in the purchase; that she got Mr. Weiler to act for her, to go and buy the place. Mr. Weiler testifies, if he is to be believed, that he

[Shuster v. Kaiser and Wife.]

acted for her as her agent; made a bargain for the property and agreed to pay $900; that she gave him $200 she had saved to pay down, and they gave notes for the balance. The wife did not go upon the notes; the husband was the drawer of them and Mr. Weiler indorsed them. It is further alleged that after they went into possession of the new saloon they sold the old one, and she herself, out of her savings out of her business paid the notes; that they were renewed from time to time but were eventually paid; in other words that she paid the whole nine hundred dollars in the end with her own money.

If the plaintiffs have satisfied you that she got the money originally from her father's estate, that she put it into this first saloon, that she made money there and bought the other one, selling the old one, and ultimately with her own money, not coming from her husband, paid the $900, she would be entitled to the property in law. A married woman may lawfully start in business and employ her husband to work for her, but when she comes to claim the property under such circumstances, the husband acting and apparently doing the business before the world, she must clearly satisfy a jury that it really is her property. It is perfectly fair and honest if she does it intending to keep the property as her own, not intending to give it to the husband and let him use it and afterwards claim it.

If the plaintiffs have satisfied you of the truth of their theory the property is the wife's and not the husband's.

On behalf of the defendant, Mr. Shuster, it is claimed that the wife couldn't buy on credit. and the husband make the notes; that at the most she only paid $200; that she allowed her husband to carry on the business in his own name; to make the notes in his own and to take out the license in his own name.

That really, in fact, she only let the husband have this money, just let him take it, and this claiming of the property is an after-thought. If you find the facts to be as claimed by the defendant, that Mrs. Kaiser allowed her husband to have the money, allowed him to run the saloon, and he ran it as if he were the owner, giving no notice to creditors that it was hers, the defendant is entitled to a verdict.

[The fact of the husband's signing the note by itself would indicate, if there was nothing else in the case, that credit was given by the party taking it to the husband and not to the wife; but if the purchase was made through Mr. Weiler for her, a bill of sale made to her and the money paid for, the fact that the husband signed the notes would not make any difference.]

You have the facts and will determine which of these theories is correct, remembering that the burden of proof is on the plaintiff. Mrs. Kaiser must show to your satisfaction that it was her own money, not derived from her husband, and that she kept it as her own.

[In conclusion, gentlemen, if this lady had money from her brother, put it into the first saloon, made a little money there, and then bought this other one with that money, and partly on credit, and *subsequently* paid for it out of her earnings, out of her own separate property, she is entitled to a verdict.]

On the other hand if that was a matter set up afterwards, if she paid in but $200 and allowed the husband to run the business in his own name, the defendant is entitled to a verdict. If you find the property is the wife's you find for the plaintiff, if not, you find for the defendant.

Verdict for plaintiff and judgment thereon, whereupon the defendant took this writ assigning for error the answer of the court to the plaintiff's third and fifth points, and that portion of the charge enclosed in brackets.

*C. A. O'Brien*, for plaintiff in error.—Conceding that the $200 cash was Mrs. Kaiser's separate estate distinctively, there being no dispute that the $700, or seven ninths of the purchase money, was paid in or secured by the obligations of the husband and another, to whom did the title pass from the seller? We think that the law, as re-asserted in the cases of Lochman *v.* Brobst, 14 W. N. C., 134, and Lienbach *v.* Templin, 15 P. L. J., 77, is the law of this case. We contended that as the sale was made substantially on credit, the plaintiff would have to show affirmatively, that "in point of fact the credit was given on the faith of her separate estate:" Baringer *v.* Stiver, 13 Wr., 129; that she "must show that her separate estate was the foundation of her credit:" Seeds *v.* Kahler, 26 P. F. S., 262. Not only that she had a separate estate, available and adequate, but that that estate was relied upon by the vendor as the means of payment for the purchase; she might give a void obligation: Sixbee *v.* Bowen, 10 Norris, 149, or no obligation, Lochman *v.* Brobst, *supra*, but her separate estate must have been the source to which the seller looked for payment.

Looking at the whole transaction, even in the most favorable light suggested by the plaintiff, we insist that "the purchase," as was said in the latest case on the subject: Pier *v.* Siegel *et al.*, 15 W. N. C., 480, "was upon the credit of the husband, and upon a judgment recovered on those notes, his property, if he had any, might have been swept away in payment for the goods in controversy."

*Magnus Pflaum*, for defendants in error.—The first and second assignments of error, not having been referred to by plaintiff in error, may be dismissed with a reference to the case of Rush *v.* Vought, 5 P. F. S., 442.

The fourth assignment of error is practically the same as the third, and they may be considered together.

In Brown *v.* Pendleton, 10 P. F. S., 422, Judge AGNEW says: "That too much importance must not be attributed to forms, contrary to the clearly proved intentions and acts of the parties, is well shown by LOWRIE, C. J.: Trimble *v.* Reis, 1 Wr., 454–5." In Seeds *v.* Kahler, 26 P. F. S., 262, the husband made a purchase for his wife, and gave a note therefor, signing it "John E. Seeds, for Josephine Seeds," which was sustained. In Conrad *v.* Shomo, 8 Wr., 193, a case very similar to this, the wife purchased real estate at a price of $1,200, and paid only $100, giving eleven promissory notes for $100 each, secured by mortgage, for the unpaid purchase money, which was sustained. The case of Wieman *v.* Anderson, 6 Wr., 311, seems entirely in point. "Property purchased by a wife on the credit of her separate estate, or by her earnings derived from the management of it, is protected from her husband's creditors:" Brown *v.* Pendleton, 10 P. F. S., 419; Bucher *v.* Ream, 18 Id., 421; Silveus' Ex'rs *v.* Porter, 24 Id., 451. Upon "slight and insufficient grounds" the claim of the wife, she having proved her separate property, should not be rejected: Rush *v.* Vought, 5 P. F. S., 442. We think that therefore, the rule laid down in Lochman *v.* Brobst, 6 Out., 481, was fully complied with.

Mr. Justice CLARK delivered the opinion of the court, January 4th, 1886.

In the year 1880 Theresa Kaiser, wife of Julius Kaiser, received from her father's estate in Ohio the sum of $450; with this money she purchased from Blasius Rauch, and furnished a saloon property at No. 18 Carson street, Pittsburgh; the goods were subsequently insured in her name, and the business was conducted for her benefit from the date of the purchase until the 6th of November, 1881. On the day last named, she claims to have purchased, through Emanuel Weiler, from J. J. Speck the furnishment, stock in trade, and leasehold of a saloon and boarding house, known as the Panhandle Hotel, at No. 10 Carson street, at and for the price of $900, which was paid—$200 in cash, and the residue in five promissory notes of $140 each, payable in two, four, six, eight, and ten months thereafter, made and signed by Julius Kaiser and indorsed by Emanuel Weiler. The whole transaction would appear to have been conducted by Weiler, who was a whole-

sale liquor merchant in Pittsburgh. He made the purchase for Mrs. Kaiser, at her request. Speck sold wholly upon the faith and credit of his indorsement, and was indifferent as to whether the purchase was for Julius Kaiser or for his wife, or as to who should sign the notes; his book-keeper, however, said that the note of a married woman was not a proper paper for discount in bank, and that Kaiser might as well sign them —that it was immaterial, as the only party they knew in the transaction was the indorser. Kaiser then signed the notes, Weiler indorsed them, and in this form they were delivered to Speck. If the testimony on part of the plaintiff is believed, however, there can be no question but that the purchase was in fact effected in the interest and in the name of Theresa Kaiser; as to this the witnesses agree, and the bill of sale and accompanying receipt show that this was without doubt the intent of all the parties participating in the transaction. Mrs. Kaiser says that her husband represented her in the purchase, and he admits that he did; Weiler says that it was to Mrs. Kaiser he lent the credit of his indorsement, and the bill of sale shows that Speck so understood the matter.

There is no proof that at this time Julius Kaiser was the owner of any estate, or had any means, either in money or otherwise, nor that he was indebted in any sum whatever; he neither owned or owed anything, nor was he about to embark in any new or hazardous business, from which an indebtedness might be anticipated. The damages for which Shuster's judgment was afterwards obtained were not sustained, and no cause of action existed until in the year 1882. Theresa Kaiser, on the other hand, was or assumed to be the owner of the saloon property at No. 18 Carson street, which she paid for with the money received from her father's estate, and which she subsequently sold for some three hundred dollars, and had in hand $200, which she alleges were accumulated profits or earnings derived from its management. This $200, it is alleged, was paid as the hand money of the purchase, and the notes were discounted in bank, and were subsequently paid by her with money made in the business, which she regarded as her own.

There may have been at the trial some controversy as to the facts, and as to the *bona fides* of these several transactions, but all this has been settled by the verdict, and the question here, as stated in the argument of counsel, is as to the legal effect of the purchase of the Panhandle Hotel under the facts and circumstances mentioned.

It is certainly well settled, by the decisions of this court, that a feme covert cannot buy personal estate upon merely personal credit; if she does, her husband's creditors may seize

[Shuster *v.* Kaiser and Wife.]

and sell it for his debts. If, however, she is the owner of a separate estate, she may contract upon the credit of that estate; or rather that estate will give her a foundation for credit, and her title thus acquired will be good, not only as against her husband, but against his creditors. It may be that the sale of the Panhandle Hotel, so far as Speck, the vendor, was concerned, was not made on the personal credit of Theresa Kaiser; that it was made upon the faith of the notes indorsed by Emanuel Weiler, who loaned his credit for the purpose. The transaction was substantially the same as if the purchase was made with borrowed money, for it was made upon the borrowed credit of Weiler; and, whilst no obligation was or could be given by Mrs. Kaiser to secure Weiler, it is plain that the notes were given for a debt, which Mrs. Kaiser was in fact to pay. It was therefore as we said in Pier *v.* Siegel, 15 Weekly Notes, 480, a purchase upon credit, but it does not follow necessarily that it was a purchase upon her personal credit alone. Mrs. Kaiser had, or claimed to have, a separate estate, and Weiler's indorsement may have been made on the credit of that separate estate; he knew that she was responsible, he says, and that Kaiser was not, and it was her interests, not his, that he represented in the purchase. But even if we assume that the purchase or the indorsement, as the case may be, was made upon Mrs. Kaiser's personal credit alone, the transaction was certainly valid, and Mrs. Kaiser's title complete, not only as against Speck, who with full knowledge of the facts gave her a bill of sale, and delivered the possession of the goods, but also against Weiler and Julius Kaiser, who themselves procured the contract to be made in this form, and, as Kaiser had no creditors, there is no one to complain. It was certainly competent for Kaiser at that time, in good faith, to have made a settlement upon his wife, effective not only against himself, but also against his subsequent creditors, not intended to be defrauded; and if he might have made a settlement upon her, he certainly might give his note simply by way of accommodation, to her; especially so, when she was possessed of a separate estate, reasonably proportionate to the amount whilst he was possessed of none. He might, without doubt, under the circumstances, have purchased the goods in his own name, *bona fide*, giving his own note for the price, and, with Weiler's consent, have bestowed them wholly upon his wife; and if so, he could lend her the use of his name to the notes, to accomplish the same purpose. The purchase money was paid out of the profits and earnings of the house; it is not pretended that the husband paid any part.

In Goff *v.* Nuttall, 8 Wr., 78, a lot of ground was conveyed .

[Shuster *v.* Kaiser and Wife.]

to a married woman who was not shown to have any separate estate; the entire purchase money was secured by mortgage, in which the husband joined. The husband improved, and for a time occupied a blacksmith shop on the premises; after he left the shop, it was rented, and all of the purchase money that was ever paid was paid from the rents of the shop. But it did not appear that the husband was at the time indebted, or that he anticipated any indebtedness. In a controversy between the wife and a subsequent creditor of the husband, it was held that the title to the property vested in the wife, on the ground that the husband did not pay the purchase money, and that if he had, no equity would thereby vest in him, as it was competent for him to make a settlement upon her, good not only as against himself but also subsequent creditors; and that even if the property were a gift from the husband, it was such a gift as he had a right to make.

So in Thompson *v.* Thompson, 1 Norris, 378, it was held, the right of a husband to procure a conveyance of land to be made to his wife, and to settle the land upon her, is not affected by the fact that he borrowed a portion of the purchase money at the time of the execution of the deed, if at the time he had no other debts, and was not about to enter into any hazardous business, or to contract fresh obligations. And in Nippes's Appeal, 25 P. F. S., 472, it was said, that in the absence of proof of any fraudulent intention, the fact that the land conveyed was all the property the husband had was immaterial. The same rules which govern the acquisition of personalty by married women, govern in the purchase of realty by them, and therefore the decisions of this court as to one is, in general, equally applicable to the other.

It is a matter of little consequence here, that the license was in the husband's name; this was proper for the jury in their deliberations as to whether or not the business really belonged to the husband or to the wife, but if she was in fact the owner of the property in dispute, she could not by this circumstance lose her title: Troxell *v.* Stockberger, 15 Weekly Notes, 117. She could not, it seems, have the license in her name, and for that reason it was taken out in his, until after the decree was entered constituting the wife a feme sole trader. The testimony is clear that the liquors were purchased, and the business generally conducted by her, and under the findings of the jury the profits and earnings were hers.

Judgment affirmed.